1   Scott E. Davis
    State Bar No. 016160
2   SCOTT E. DAVIS, P.C.
    20827 North Cave Creek Road, Suite 101
3   Phoenix, AZ  85024

4   Telephone:  (602) 482-4300
    Facsimile:   (602) 569-9720
5
    *Attorney for Plaintiff Barbara Crass*
6

7              **UNITED STATES DISTRICT COURT**

8                 **DISTRICT OF ARIZONA**

9

10  Barbara Crass,                          Case No.

11         Plaintiff,

12         v.                               **COMPLAINT**

13  Disability Management Alternatives, LLC,
    United Health Group, United Health Group
14  Long Term Disability Plan,

15         Defendants.

16

17         Now comes the Plaintiff, Barbara Crass (hereinafter referred to as "Plaintiff"), by

18  and through her attorney, Scott E. Davis, and complaining against the Defendants, she

19  states:

20                      *Jurisdiction*

21         1.      Jurisdiction of the court is based upon the Employee Retirement Income

22  Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23  Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24  employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      Plaintiff is a resident of Navajo County, Arizona.

3.      Upon information and belief, Defendant United Health Group (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §3(I) which was fully funded and paid for by required contributions.  The Company's purpose in establishing the insurance fund was to provide disability insurance for its employees.  Upon information and belief, the fund is self-insured and may have been included in and was part of the United Health Group Long Term Disability Plan (hereinafter referred to as the "Plan") which was created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, the Company or Plan may have delegated responsibility for the Plan and/or claim administration of the Plan to Disability Management Alternatives, LLC (hereinafter referred to as "Disability Management").  Plaintiff believes that as it relates to her claim, Disability Management functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Disability Management.

5.      Upon information and belief, the Company or Plan operated under a structural conflict of interest in that it operated in dual roles as the claims administrator and payor of benefits, if it approved Plaintiff's claim it was also liable for payment of benefits.  The Company or Plan's conflict of interest may have led it to retain a company such as

Disability Management to be the claims administrator in that Company or Plan fully underwrote the aforementioned Plan and would directly benefit financially if Disability Management administered its claims in a parsimonious manner.  Disability Management's conflict of interest exists in that if it maintained a parsimonious approach to managing the Company or Plan's claims it would benefit directly by fulfilling the terms of its administrative services agreement with the Company or Plan.

6. The Company, Plan and Disability Management conduct business within Navajo County and all events giving rise to this Complaint occurred within Navajo County.

### Venue

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policies and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policies pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee since July 28, 2003, Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Clinical Care Manager on or about July 5, 2006. Plaintiff has remained disabled as that term is defined in the relevant Plan continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Upon information and belief, the relevant Plan provides the following definition of a covered disability and applies to Plaintiff's claim:

'During the first 24-month period that you receive benefits…[you are Disabled] if you cannot perform the essential functions of your regular occupation or of a reasonable employment option that UnitedHealth Group offers to you, leaving you unable to earn more than 80% of your monthly eligible compensation.'

11.     Plaintiff applied for and received short term disability benefits January 1, 2007 through December 31, 2007.  Disability Management also informed Plaintiff she was obligated to file an application for Social Security and keep Disability Management advised of the status of the Social Security claim.

12.     Plaintiff applied for social security benefits through the Social Security Administration (SSA).  As part of SSA's evaluation, Plaintiff underwent an evaluation dated April 20, 2007, which determined Plaintiff suffered "limitations in her ability to function," and found that Plaintiff was "not fully capable of self managing her own funds…"

13.     On May 11, 2007, Disability Management's own Clinical Consultant, K. Mazza, RN, MS, ED, evaluated Plaintiff's case file, which included the April 20, 2007 SSA evaluation and concluded Plaintiff was "markedly limited: in ability to complete a normal workday…" The Clinical Consultant further concluded Plaintiff's "condition will impose limitations for 12 months."

14.     In a letter dated June 17, 2007, SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of January 2007.  SSA's definition of disability is more stringent than the aforementioned definition of disability set forth in the relevant Plan for the first 24 months of disability; therefore, SSA's approval and continued payment of disability benefits through the date of this Complaint is relevant evidence for this Court to consider with regard to the aforementioned conflicts of interest Plaintiff believes resulted in the denial of her claim and the lawfulness of Disability Management's decision.

15.     As part of a review of Plaintiff's entitlement to continued long term disability benefits, Disability Management obtained a Clinical Case Review of Plaintiff's claim dated December 31, 2007, from an alleged independent reviewer Amy Hopkins, MD, MPH, PhD, FACOEM.  Disability Management and Dr. Hopkins' conflicts of interest are evident in the Clinical Case Review report authored by Dr. Hopkins.

16.     Upon information and belief, based on a cursory review of the LEXIS legal database,[1] Plaintiff believes Dr. Hopkins is a long time and frequent consultant for the disability insurance industry, including companies such as Disability Management and/or United Health Group and therefore, Plaintiff believes Dr. Hopkins' review of her claim presents a conflict of interest and is a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

17.     In her December 31, 2007 review, Dr. Hopkins did not examine Plaintiff and her opinion that Plaintiff was able to work in "any capacity" "full-time, without restrictions or limitations" was based entirely on a selective review of the evidence which actually supported Plaintiff's claim.  Dr. Hopkins' review of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence she submitted which proved she was disabled in order to provide a reason for Disability Management to justify a denial of her claim.  Dr. Hopkins' review of Plaintiff's medical records was further flawed because while Dr. Hopkins acknowledged two of the serious medical conditions from which Plaintiff suffers from "are medically unexplained syndromes with no identified etiology and no demonstrable pathology," she relied on the absence of medical documentation…the very

---

[1] *See Magee v. Metropolitan Life Ins. Co.*, 632 F.Supp.2d 308 (S.D. N.Y. 2009); *Perez v. Cozen & O'Conner Group Long Term Disability Coverage*, 459 F.Supp.2d 1018 (S.D. Cal. 2006); and *Webber v. Aetna Life Ins. Co.*, 375 F.Supp.2d 663 (E.D. Tenn. 2005).

documentation Dr. Hopkins acknowledged does not exist with current medical technology…to demonstrate Plaintiff's alleged total lack of any disability.

18.     Upon information and belief, Plaintiff believes Dr. Hopkins may have an incentive to protect her own consulting relationships with the disability insurance industry by providing medical review reports which selectively reviewed and ignored evidence as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Disability Management and which supported the denial of Plaintiff's claim.  Plaintiff believes Dr. Hopkins' conflict of interest led to her biased review.

19.     Disability Management relied extensively on Dr. Hopkins' December 31, 2007 Clinical Case Review report in denying Plaintiff continued long term disability benefits. In its role as Plaintiff's fiduciary, Disability Management knew or should have known that Dr. Hopkins' finding of the complete lack of any serious medical condition was contrary to not only Plaintiff's own treating physicians medical records and opinions but to the findings of Disability Management's own medical reviewers, including the prior determination that Plaintiff was "markedly limited" in her ability to "complete a normal workday" and would remain so for twelve (12) months (*i.e.* until around May 11, 2008). Therefore, before terminating benefits, Disability Management should have sought clarification of Dr. Hopkins' opinions but it did not do so due to Disability Management's conflict of interest as referenced *infra*.  Instead of adequately investigating Plaintiff's claim, Disability Management terminated her benefits.

20.     In a letter dated January 2, 2008, Disability Management notified Plaintiff it was terminating her long term disability benefits effective December 31, 2007.  In the denial letter, Disability Management failed to provide a full and fair review pursuant to ERISA because it completely failed to reference or consider and selectively reviewed most, if not

all of the evidence submitted by Plaintiff, which adequately documented her continued serious medical conditions and supported the fact her serious medical conditions had not improved and she continued to meet the definition of disability on both aforementioned policies.

21.    In terminating Plaintiff's benefits, Disability Management relied extensively on the December 31, 2007 Clinical Case Review report. Disability Management ignored its fiduciary duty to Plaintiff by erroneously and unlawfully de-emphasizing the opinions of her treating physicians who confirmed Plaintiff's medical condition(s) had regressed. Disability Management's determination was further erroneous and unlawful because Plaintiff's medical condition did not improve in any meaningful way which would have allowed a return to work [2] from the time Disability Management originally approved her claim for benefits.

22.    In its letter dated January 2, 2008, Disability Management denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider all evidence submitted by Plaintiff, failing to consider all the limitations set forth in her medical evidence, failing to fully evaluate all of Plaintiff's serious medical conditions, failed to consider all medical issues raised by Plaintiff's medical records, relying on the absence of documented medical evidence while its own medical expert admits no such evidence is available utilizing current medical technology, ignoring

_____

[2] *McOsker v. Paul Revere Life Insur.Co.,* 279 F.3d 586 (8th Cir. 2002), held once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable.  *Also see, Regula v. Delta Family-Care Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001), *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); *Levinson v. Reliance Standard,* 245 F.3d 1321 (11th Cir. 2001)(burden placed on insurer to establish claimant's ability to work).

Plaintiff's self-reported complaints, failing to consider the combined effect of all Plaintiff's serious medical conditions, failing to consider the combined side effects of Plaintiff's multiple medications, failing to consider, ignoring or de-emphasizing abnormal test results and failing to request for Plaintiff to undergo an independent medical evaluation, failing to request that Plaintiff undergo a vocational evaluation to assist in assessing Plaintiff's ability to work and failing to request for Plaintiff to undergo a functional capacity evaluation as provided for in the Plan.

23.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the January 2, 2008 denial of her claim for benefits in a letter dated June 20, 2008 and in support of her appeal she submitted additional medical records.

24.    Plaintiff submitted, *inter alia*, the April 24, 2007 SSA evaluation and Notice of Award of Social Security benefits; a May 7, 2008 Physical Capabilities Form prepared by one of her treating physicians stating Plaintiff was not released to return to work and the restriction was "permanent."  Plaintiff also submitted a narrative letter from her primary care physician dated June 18, 2008, which addressed several issues relied on by Disability Management in its January 2, 2008 denial.

25.    On September 8, 2008, Disability Management's  Consultant, K. Mazza, RN, MS, ED, who previously evaluated Plaintiff's file, including the April 20, 2007 SSA evaluation, and she determined the claim was "very complex, and probably impaired contrary to the original review…"  The fact this consultant reviewed Plaintiff's claim at the initial level of review and after an adverse determination had been made violated ERISA, specifically § 2560.5031(h)(3)(v).

26.    On appeal, Disability Management obtained a medical review of Plaintiff's claim by an alleged independent physician consultant, J. W. Rodgers, M.D.  Disability

Management and Dr. Rodgers' conflict of interest is evident in the September 8, 2008 Physician Consultant Review report.

27.     Upon information and belief, based on a cursory review of the LEXIS legal database,[3] Plaintiff believes Dr. Rodgers may be a long time consultant for the disability insurance industry, including companies such as Disability Management and therefore, Plaintiff believes Dr. Rodgers' review of her claim is a conflict of interest and a reason her claim was denied and she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

28.     In his September 8, 2008 Physician Consultant Review report, Dr. Rodgers did not examine Plaintiff and his opinion Plaintiff was able to perform sedentary work was based entirely on a selective review of the evidence which actually supported Plaintiff's claim.   Dr. Rodgers' review of Plaintiff's medical records was flawed because it was selective and sought to de-emphasize evidence Plaintiff submitted which proved she was disabled in order to provide a reason for Disability Management to justify a denial of her claim.

29.     Upon information and belief, Plaintiff believes Dr. Rodgers may have an incentive to protect his own consulting relationships with the disability insurance industry, for the same reason as set forth herein with regard to Dr. Hopkins, which are incorporated herein by reference.

30.     In a letter dated September 18, 2008, Disability Management notified Plaintiff it found she did not meet the definition of disability and it was upholding the denial of her long term disability benefits as of December 31, 2007. Disability Management relied extensively on Dr. Rodger's September 8, 2008 Physician Consultant Review report in

---

[3] *See Hunt v. Metropolitan Life Ins. Co.*, 425 F.3d 489 (8th Cir. 2005); and, *Jordan v. Northrop Gumman Corp. Welfare Ben. Plan*, 63 F.Supp.2d 1145 (C.D. Cal. 1999).

denying Plaintiff's claim.  In its role as Plaintiff's fiduciary, Disability Management knew or should have known that Dr. Rodgers' finding of the complete lack of any serious medical condition was contrary to not only Plaintiff's own treating physicians but also the findings of Disability Management's own medical reviewers.

31.    In its September 8, 2008 denial letter Disability Management again denied Plaintiff of a full and fair review for the reasons set forth *supra*.

32.    In evaluating Plaintiff's claim on appeal, Disability Management had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[4]

33.    Plaintiff believes the reason Disability Management provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the aforementioned dual roles it undertook as decision maker and payor of benefits in her claims which created an inherent conflict of interest and this conflict is the reason her disability claim and waiver of life insurance premium claims were denied.

34.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Disability Management's decision to deny her claim.

---

[4] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

-10-

35.   Disability Management has informed Plaintiff she has exhausted her administrative remedies with regard to both claims for long term disability benefits and a waiver of her life insurance premium pursuant to the relevant policies.

36.   With regard to whether Plaintiff meets the definition of disability set forth in the plan, the Court should review the evidence in Plaintiff's claim *de novo* because the plan does not contain discretionary language.

37.   As a direct result of Disability Management decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

38.   Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

39.   Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.   For an Order requiring Defendants to pay Plaintiff disability benefits and to waive the premiums on her life insurance coverage as well as any other benefits she is entitled to as a result of being found disabled pursuant to the relevant Plan from the date she was first denied benefits through the date of judgment and prejudgment interest thereon as a result of being found disabled;

B.   For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan conditions for termination of benefits;

1        C.     For attorney's fees and costs incurred as a result of prosecuting this suit

2   pursuant to 29 U.S.C. §1132(g); and

3        D.     For such other and further relief as the Court deems just and proper.

4        DATED this 18th day of February, 2010.

5        SCOTT E. DAVIS. P.C.

6

7        By:    */s/ Scott E. Davis*

8        Scott E. Davis
     Attorney for Plaintiff